[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10899

_____

D.C. Docket No. 8:06-cr-00464-EAK-TGW-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE LASHANE HAMILTON,
a.k.a. Mo Bentley,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 23, 2013)

Before CARNES, HULL and ANDERSON, Circuit Judges.

HULL, Circuit Judge:

Appellant Maurice Hamilton appeals the district court's denial of his Motion for Modification or Reduction in Sentence under 18 U.S.C. § 3582(c)(2). Hamilton sought a reduction in his sentence based on Amendment 750 to the United States Sentencing Guidelines. After review and oral argument, we vacate the district court's February 2, 2012 order denying Hamilton's § 3582(c)(2) motion and remand for further proceedings.

## I. FACTUAL HISTORY

This appeal is about what drug quantity the district court found Hamilton responsible for at his initial sentencing hearing in 2007. The district court needed to know those original drug quantity findings in order to determine if Amendment 750 actually lowered the guidelines range upon which Hamilton's original sentence was based.

The problem here is that upon receiving Hamilton's § 3582(c)(2) motion, the probation office in 2011 inaccurately advised the district court about what the fact findings were at the original 2007 sentencing. We recount the factual and procedural history in order to explain why the district court needs to consider again Hamilton's § 3582(c)(2) motion, this time based on the correct information about what findings were made at the original sentencing.

### A.    Indictment and Guilty Plea

2

In 2006, a federal grand jury indicted Hamilton and nine others.  The nine-count Indictment included the four counts against Hamilton and others which we describe below.

Count One alleged a conspiracy to possess and distribute 50 grams or more of cocaine base ("crack cocaine") and an unspecified amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(C), and 846. Count One charged that the conspiracy began "at least in or about April 2006," and continued "through on or about November 8, 2006."  Count Two alleged a conspiracy, for the same time period, to use and carry firearms during and in relation to drug trafficking, in violation of 18 U.S.C. §§ 924(c), 924(o), and 2.

Count Four alleged a substantive count of possession with intent to distribute, on or about July 26, 2006, "50 grams or more" of crack cocaine and "a quantity" of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 841(b)(1)(C), and 18 U.S.C. § 2.

Count Seven alleged a substantive count of possession with intent to distribute, on or about July 26, 2006, "5 grams or more" of crack cocaine, "a quantity" of powder cocaine, and "a quantity" of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), 841(b)(1)(C), and 841(b)(1)(D), and 18 U.S.C. § 2.

Pursuant to a written plea agreement, Hamilton pleaded guilty to the substantive drug offense in Count Seven, and the government dismissed all other charges against Hamilton, including the conspiracy charges. Due to his prior felony drug conviction, Hamilton's Count Seven conviction subjected him to a mandatory minimum sentence of ten years' imprisonment and a statutory maximum of life imprisonment. See 21 U.S.C. § 841(b)(1)(B)(iii) (2006).

## B.    2007 Presentence Investigation Report

On September 6, 2007, the United States Probation Office ("probation") issued a Presentence Investigation Report ("PSI"), which reported that during 2006, Hamilton actively participated in a drug distribution organization operating in Manatee County, Florida.

In paragraphs 26, 27, 31, and 34, the PSI reported these drug quantities as being found in the various defendants' possession. Specifically, the PSI stated that law enforcement officers found: (1) 59.771 grams of crack cocaine in Hamilton's possession when the officers arrested him on July 26, 2006; (2) 1.434 grams of crack cocaine and 27.650 grams of powder cocaine in a co-conspirator's possession when the officers arrested him on July 26, 2006; (3) 293.887 grams of crack cocaine and 221.279 grams of powder cocaine in the bedroom of a residence used in the conspiracy when the officers searched the residence on July 26, 2006;

4

and (4) 22.4 grams of crack cocaine in the possession of three co-conspirators when law enforcement officers arrested them on September 28, 2006.

In paragraph 36, the PSI addressed the amount of drugs in the overall conspiracy. In paragraph 36, the PSI stated that the defendants in the conspiracy received "at least one kilogram of powder cocaine per week," that the powder cocaine was cooked into crack cocaine, and that the conspiracy lasted from at least April 2006 through July 26, 2006, a total of approximately 16 weeks, as follows:

> During the course of this conspiracy, the defendants received at least one kilogram of powder cocaine per week, which was then cooked into crack cocaine for distribution. Although the conspiracy began sometime before the investigation was initiated, it lasted from at least April 2006 through July 26, 2006, a total of approximately 16 weeks. Some of the defendants continued their involvement in the distribution of crack cocaine until November 2006. As all of the defendants in this case were part of a joint scheme to sell and deliver crack cocaine, each defendant is responsible for the entire amount distributed by the group.

In paragraph 43, the PSI stated that Defendant Hamilton's base offense level was 38 because he "was involved in the distribution of at least 1.5 kilograms of cocaine base," as follows:

> Base Offense Level: The guideline for drug offenses is found at USSG § 2D1.1, which provides that the base offense level is determined based on the amount of drugs involved in the offense as set out in the Drug Quantity Table found at USSG § 2D1.1(c)(1). That section provides that offenses involving 1.5 kilograms of cocaine base has [sic] a base offense level of 38. As the defendant was involved in the distribution of at least 1.5 kilograms of cocaine base, a base offense level of 38 is appropriate.

5

Under the then-applicable guidelines, a drug offense involving at least 1.5 kilograms of crack cocaine received the highest base offense level—38. See U.S.S.G. § 2D1.1(c)(1) (2006).

The PSI applied these adjustments to Hamilton's base offense level of 38: (1) a 2-level increase for possession of a firearm under U.S.S.G. § 2D1.1(b)(1); (2) a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a); and (3) a 1-level reduction for timely notice of intent to plead guilty under U.S.S.G. § 3E1.1(a)–(b). Hamilton's total offense level of 37 and criminal history category of VI yielded a guidelines range of 360 months' to life imprisonment.

In a letter to probation, Hamilton, through counsel, objected in writing "to the allegations" contained in paragraphs 17–36 of the PSI. His attorney's letter stated that "Mr. Hamilton . . . maintains that he was not a member of the Cooper/Williams 'group,' 'organization,' 'drug distribution network,' or 'conspiracy.'" His attorney's letter also objected to paragraph 43 of the PSI, stating Hamilton's base offense level should be 30.

Probation then filed an Addendum to the PSI (the "Addendum"). That Addendum, dated September 7, 2007, noted that, although Hamilton pled guilty only to the one substantive possession charge and the government dismissed the conspiracy charges, Hamilton's "relevant conduct" for sentencing purposes included all "conduct that was part of the same course of conduct or common

6

scheme or plan as the offense of conviction, and all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity."

As to the common scheme or conspiracy, the Addendum stated that the defendants received "one kilogram of powder cocaine per week" that was cooked into crack cocaine:

> In this case, this group of individuals came to an agreement to buy powder cocaine, cook it into crack cocaine, package it for distribution, take cellular telephone orders for the crack cocaine, and to maintain firearms at the drug house to protect the drugs, the drug money, and the drug sales. Each defendant is held accountable for the amount of drugs distributed by the group. Witness statements and trial testimony reveal that the defendants received at least one kilogram of powder cocaine per week, that it was cooked into crack cocaine by various members of the group, that it was packaged for distribution, and that it was sold by the distributors to their customers. Despite the fact that this group operated for at least two months, only two weeks of activity is sufficient to establish at least 1.5 kilograms of crack cocaine, which establishes a base offense level of 38.

While paragraph 36 of the initial PSI reported the conspiracy operated for at least April through July 2006, a total of approximately 16 weeks, the Addendum stated the "group operated for at least two months."

While the initial PSI never indicated how much powder cocaine this group used in order to cook a kilogram of crack cocaine, the Addendum now stated that two weeks of activity (i.e., two kilograms of powder cocaine) was sufficient "to establish at least 1.5 kilograms of crack cocaine." Thus, the Addendum implicitly

7

used a 0.75 conversion rate with 2 kilograms of powder cocaine yielding 1.5 kilograms of crack cocaine every two weeks.[1]

## C.    2007 Sentencing Hearing

Hamilton's original sentencing hearing occurred on September 17, 2007.  At the hearing, the probation officer, who prepared the PSI, testified that Hamilton and his co-conspirators "maintained a drug house," where they cooked powder cocaine into crack cocaine and stored the crack cocaine before distributing it.  The probation officer noted that Hamilton "admitted in his plea agreement that he was part of that group."

After hearing from the probation officer and the attorneys, the district court overruled Hamilton's objections about his participation in the conspiracy.  It determined that there was "more than enough evidence to charge the defendant [with] being part of this conspiracy and activities."  The district court noted that Hamilton "admitted in the plea agreement he's part of the group of individuals.  He was part of the day-to-day operations to make, sell crack cocaine."  Thus, the district court "held [Hamilton] accountable for all the conduct that was part of the

---

[1]The 0.75 conversion rate of 2 kilograms of powder cocaine yielding 1.5 kilograms of crack cocaine is generally consistent with the Sentencing Commission's estimate that, under "ideal conditions," one gram of powder cocaine produces .89 grams of crack cocaine. See U.S. Sentencing Commission, Report to the Congress:  Cocaine and Federal Sentencing Policy 63 (2007), http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Drug_Topics/200705_RtC_Cocaine_Sentencing_Policy.pdf (last visited Apr. 8, 2013).

same course of conduct or common scheme or plan as the offense of conviction, and all reasonably foreseeable acts of others in furtherance of the joint[ly] undertaken criminal activity."

Importantly, the district court then stated: "The Court adopts the undisputed factual statements and guideline applications as contained in the presentence report. As to the controverted factual statements and guideline applications, the Court adopts the position of the probation office as stated in the addendum." As noted above, Hamilton had objected to paragraphs 36 and 43, which set forth drug quantities and probation's resulting guidelines calculation of a base offense level of 38. The district court thus adopted the Addendum's calculations that the defendants received one kilogram of powder cocaine per week, that the defendants operated for "at least two months," and that two weeks of such activity established "at least 1.5 kilograms of crack cocaine, which establishe[d] a base offense level of 38."

Using a base offense level of 38, the district court applied the other adjustments and calculated Hamilton's total offense level as 37, his criminal history category as VI, and his guidelines range as 360 months' to life imprisonment. The district court granted the government's motion for a downward departure of three offense levels pursuant to § 5K1.1 of the guidelines, resulting in a total offense level of 34. Hamilton's total offense level of 34 and criminal

9

category of VI yielded a new guidelines range of 262 to 327 months'
imprisonment.  The district court imposed a 262-month sentence. [2]

After being sentenced, Hamilton did not challenge the district court's
adoption of the Addendum as to the drug quantities in the conspiracy.  On
September 27, 2007, Hamilton appealed his sentence.  However, on March 7,
2008, this Court granted Hamilton's motion to voluntarily dismiss the appeal.

## D.    The First § 3582(c)(2) Motion

On November 6, 2008, Hamilton pro se moved to modify his sentence
pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 706 to the guidelines.
Under Amendment 706, an offense must involve 4.5 kilograms or more (changed
from 1.5 kilograms or more) of crack cocaine to result in a base offense level of
38; an offense involving at least 1.5 kilograms but less than 4.50 kilograms
(changed from at least .5 kilograms but less than 1.5 kilograms) of crack cocaine

---

[2]At his September 17, 2007 sentencing, Hamilton asked the district court to apply the
version of the guidelines that would become effective on November 1, 2007.  Hamilton noted
that, if the district court did so Hamilton's base offense level and in turn his total offense level
would be reduced by two levels.  The district court denied Hamilton's motion.  Although the
Sentencing Commission had promulgated guidelines amendments, the district court stated that
"we do not know what the Congress is going to be doing between now and the 1st of
November."  Thus, the district court stated that it would "deny this and operate on the guidelines
that are currently in effect, and may still be in effect after the 1st of November . . . . [I]t would be
speculative to do otherwise."

resulted in a base offense level of 36.  See U.S.S.G. App'x C (Nov. 2011) amend. 706.[3]

The district court appointed counsel for Hamilton and ordered probation and the government to respond to Hamilton's § 3582(c)(2) motion.

On November 20, 2008, probation responded in a memorandum (the "First § 3582 Memo") that Hamilton was not entitled to a sentence reduction. Probation's First § 3582 Memo stated that paragraph 36 of the PSI held Hamilton accountable for at least 12 kilograms of crack cocaine, that Hamilton objected to paragraph 36, and that the district court had overruled the objection and adopted the PSI's findings that Hamilton "was responsible for 12 kilograms of crack cocaine," as follows:

> On June 8, 2007, [Hamilton] pled guilty to Possession with the Intent to Distribute 5 Grams or More of Crack Cocaine (Count Seven). [Hamilton] was a member of a drug organization that operated a house in which [the members] cooked crack cocaine and then sold it to their customers.  As paragraph 36 [of the PSI] sets out, the organization obtained at least one kilogram of powder cocaine each week, which was cooked into crack cocaine, for at least 12 weeks. Each member of the organization, including [Hamilton], was held accountable for the full amount of crack cocaine (at least 12 kilograms) distributed by the group.  At sentencing, [Hamilton] objected to the drug amounts, but the Court over-ruled that objection and adopted those statements and guideline applications in the presentence report as its findings of fact.

---

[3]Amendment 706 became effective on November 1, 2007 and the Sentencing Commission made it retroactive on March 3, 2008.  See U.S.S.G. App'x C (Nov. 2011) amend. 715.

11

. . . .

> As [Hamilton] was sentenced based on a determination that he was responsible for approximately 12 kilograms of crack cocaine, there is no impact on the base offense level as it remains at a level 38 under the amendment (4.5 kilograms or more of cocaine base).  Therefore, a reduction in [Hamilton's] term of imprisonment is not authorized under 18 U.S.C. § 3582(c) and is not consistent with USSG § 1B1.10.

Probation's First § 3582 Memo included inaccuracies and had material omissions about the original sentencing record.  Paragraph 36 of the initial PSI did not state that the operation lasted for 12 weeks, but stated it lasted "a total of approximately 16 weeks."  Probation's First § 3582 Memo did not advise the district court about the Addendum, adopted at sentencing, which stated the "group operated for at least two months," and Hamilton was accountable for "at least 1.5 kilograms of crack cocaine."

More importantly, probation's First § 3582 Memo stated that the defendants received one kilogram of powder cocaine each week for 12 weeks and then distributed "at least 12 kilograms" of crack cocaine, and Hamilton was held accountable for 12 kilograms of crack cocaine.  This would be a 1:1 conversion rate.  But the initial PSI did not indicate how much powder cocaine this conspiracy group used to cook a kilogram of crack cocaine.  However, the Addendum, adopted by the district court, calculated that the defendants received one kilogram of powder cocaine per week that they cooked into crack cocaine, that the group operated "for at least two months," and that "two weeks of activity is sufficient to

12

establish at least 1.5 kilograms of crack cocaine." As noted earlier, the

Addendum's conversion rate was 0.75.

The government agreed with probation's First § 3582 Memo's determination

that Hamilton was not entitled to relief.[4] The government, however, stated

Hamilton's offense involved "4.5 kilograms or more" of crack cocaine:

> Here, . . . the defendant's guideline base offense level of 38 does not change due to the amount of crack cocaine that was involved in this case, i.e. 4.5 kilograms or more, despite the enactment of the amendment . . . .

> [E]ven if Amendment 706 had been in effect at the time of the defendant's original sentencing, the defendant's base offense level and guideline sentencing range would be unchanged because the amount of crack cocaine involved in his case still generates a base offense level of 38.

In support of his motion, Hamilton argued that at his original sentencing the

district court had found him responsible for "more than 1.5 kilograms of crack,"

but had not found him responsible for "more than 4.5 kilograms of crack":

> [the district court] did not make any finding regarding quantity during Mr. Hamilton's sentencing hearing. [The district court] only stated that Mr. Hamilton was responsible for more than 1.5 kilograms of cocaine base. Therefore . . . Mr. Hamilton's sentence was based only on more than 1.5 kilograms of crack, but not more than 4.5 kilograms of crack. As such, he is eligible for a sentence reduction . . . .

---

[4]The government also argued Hamilton was not entitled to a sentence reduction because he was subject to a ten-year mandatory minimum sentence. This argument was flawed, as Hamilton did not seek to reduce his sentence below the mandatory minimum. The government did not raise this argument in response to Hamilton's second § 3582(c)(2) motion and does not raise it in this appeal.

On January 29, 2009, the district court denied Hamilton's first § 3582(c)(2) motion, stating only that it "[found] the responses of the government and probation persuasive."  Hamilton did not appeal.

## E.    The Second § 3582(c)(2) Motion

On October 31, 2011, Hamilton pro se filed a second § 3582(c)(2) motion.[5] Hamilton asked the district court to resentence him in light of Amendment 750 to the guidelines.  Amendment 750 raised to 8.4 kilograms (from 4.5 kilograms) the minimum amount of crack cocaine necessary to establish a base offense level of 38.  The amendment also assigned a base offense level of 36 to an offense involving at least 2.8 kilograms and less than 8.4 kilograms (changed from at least 1.5 kilograms but less than 4.5 kilograms) of crack cocaine.  See U.S.S.G. App'x C (Nov. 2011) amend. 750.[6]

The district court again appointed counsel and instructed probation and the government to respond.

Probation's response (the "Second § 3582 Memo") was substantially identical to its First § 3582 Memo.  It advised that Hamilton was not entitled to relief because the district court had found him responsible for "approximately 12

---

[5]Hamilton pro se initially filed his second § 3582(c)(2) motion on August 3, 2011.  On October 5, 2011, the district court denied the motion without prejudice, as the guidelines amendment on which Hamilton based his motion would not become retroactive until November 1, 2011.

[6]The Sentencing Commission made the amendment effective and retroactively applicable on November 1, 2011.  See U.S.S.G. App'x C (Nov. 2011) amend. 759.

kilograms of crack cocaine . . . ." The government agreed, noting that the district court "established [Hamilton's] base offense level at 38 based upon the 12 kilograms of crack cocaine for which the Court held him responsible."[7]

Hamilton responded by again arguing that at the 2007 original sentencing, the district court had only found him responsible for "at least 1.5 kilograms" of crack cocaine. Hamilton pointed out the initial PSI did not allege how much crack cocaine the kilograms of powder cocaine produced in excess of 1.5 kilograms. Hamilton argued probation's and the government's reliance on paragraphs 34 and 43 of the PSI was misplaced.

On February 2, 2012, the district court denied Hamilton's second § 3582(c)(2) motion, again stating only that it "[found] the responses of the government and probation persuasive." Hamilton timely appealed.

## II.  DISCUSSION

### A.    Governing Principles for § 3582(c)(2) Motions

Section 3582(c)(2) permits a district court to reduce the sentence of a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

---

[7]The government cited paragraph 43 of the PSI to support this statement. However, paragraph 43 did not state that Hamilton's offense involved 12 kilograms of crack cocaine. Rather, that paragraph stated only that "[Hamilton] was involved in the distribution of at least 1.5 kilograms of cocaine base." And, Hamilton objected to the allegations in paragraph 43 in the original PSI and the district court adopted the Addendum instead.

15

Commission." 18 U.S.C. § 3582(c)(2); see also U.S.S.G. § 1B1.10(a)(1). A district court may reduce a defendant's sentence based only upon a subsequently enacted amendment to the sentencing guidelines if the Sentencing Commission has made the amendment retroactively applicable by listing the amendment in U.S.S.G. § 1B1.10(c). See U.S.S.G. § 1B1.10(a); see also United States v. Carter, 110 F.3d 759, 761 (11th Cir. 1997).

Further, "[w]here a retroactively applicable guideline amendment reduces a defendant's base offense level, but does not alter the sentencing range upon which his or her sentence was based, § 3582(c)(2) does not authorize a reduction in sentence." United States v. Moore, 541 F.3d 1323, 1330 (11th Cir. 2008); see also U.S.S.G. § 1B1.10(a)(2)(B) (providing that a § 3582(c)(2) reduction is not authorized if the amendment "does not have the effect of lowering the defendant's applicable guidelines range").[8] In determining the amended guidelines range, the district court may not reconsider other "guideline application decisions" and must "leave all of its previous factual decisions intact . . . ." United States v. Cothran, 106 F.3d 1560, 1562–63 (11th Cir. 1997) (emphasis omitted); see also U.S.S.G. § 1B1.10(b), comment n. 2 ("In determining the amended guideline range . . . , the court shall substitute only the amendments . . . for the corresponding guideline

---

[8]"We review de novo a district court's conclusions about the scope of its legal authority under 18 U.S.C. § 3582(c)(2)." United States v. Jones, 548 F.3d 1366, 1368 (11th Cir. 2008). "Once it is established that 18 U.S.C. § 3582 applies, a district court's decision to grant or deny a sentence reduction is reviewed only for abuse of discretion." Id. at 1368 n.1.

16

provisions that were applied when the defendant was sentenced.  All other guideline application decisions remain unaffected.").

As this Court previously observed, "the statutory provision, the Sentencing Commission's corresponding policy statement, and the commentary to that policy statement all make it clear that a court cannot use an amendment to reduce a sentence in a particular case unless that amendment actually lowers the guidelines range in that case.  It is that simple."  United States v. Glover, 686 F.3d 1203, 1206 (11th Cir. 2012).   And a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.

Even where the applicable amendment is retroactive and application of it actually produces a lower guidelines range than the district court originally applied, the district court still retains discretion to determine whether a sentence reduction is warranted.  The guidelines provide the following:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been effect at the time the defendant was sentenced.

U.S.S.G. § 1B1.10(b)(1).

Accordingly, the district court must "decide whether, in its discretion, it will elect to impose the newly calculated sentence under the amended guidelines or

17

retain the original sentence.  This decision should be made in light of the factors listed in 18 U.S.C. § 3553(a)."  United States v. Bravo, 203 F.3d 778, 781 (11th Cir. 2000).  A district court does not commit reversible error by failing to articulate specifically the applicability of each of the factors listed in § 3553(a), "as long as the record demonstrates that the pertinent factors were taken into account by the district court."  United States v. Smith, 568 F.3d 923, 927 (11th Cir. 2009) (internal quotation marks omitted).

## B.    Original Drug Quantity Findings

Before discussing Hamilton's case, we also review two of our § 3582(c)(2) decisions discussing drug quantity findings.

In Cothran, the PSI stated that the defendant's drug offense conduct involved 206 marijuana plants.  106 F.3d at 1561.  The defendant did not contest the number of plants.  Id.  The guidelines assigned a weight value of one kilogram for each marijuana plant and Cothran was sentenced to 65 months' imprisonment on the basis of 206 kilograms of marijuana.  Id. at 1561 & n.2.  After the defendant's conviction and sentence were final, the Sentencing Commission enacted and made retroactive Amendment 516 to the guidelines, which changed the weight equivalence for one marijuana plant for sentencing purposes from one kilogram to one hundred grams.  Id.; see U.S.S.G. App. C, Amend. 516 (Nov. 1, 1995).

18

The defendant in Cothran filed a § 3582(c)(2) motion for a sentence reduction in light of Amendment 516. The defendant's motion asked the district court to apply the new ratio with 206 plants being the equivalent of 20.6 kilograms of marijuana. The defendant also asked the district court to consider new evidence and to re-examine the number of plants attributable to him at resentencing. Id. at 1561–62 & n.4.[9] The district court agreed to apply the new ratio and reduced the defendant's sentence from 65 to 60 months; however it refused to re-examine the number of plants based on new evidence. Id. at 1561.

This Court affirmed in Cothran. We concluded that "the district court was correct in declining to re-examine the number of plants charged to [defendant] Cothran." Id. at 1563. We quoted as persuasive the Eighth Circuit's reliance on U.S.S.G. § 1B1.10(b), which directs a district court "'to consider the sentence that it would have imposed had the amendment been in effect at the time of the original sentencing,'" and the Eighth Circuit's reasoning that it is "'implicit in this [§ 1B1.10(b)] directive that the district court is to leave all of its previous factual decisions intact when deciding whether to apply a guideline retroactively.'" Id. at 1563 (quoting United States v. Adams, 104 F.3d 1028, 1030–31 (8th Cir. 1997) (additional internal quotation marks and alterations omitted).

---

[9]The defendant contended that his evidence would establish he was responsible for only 96 marijuana plants. Id. at 1562 n.4.

We returned to the drug quantity issue in United States v. Davis, 587 F.3d 1300 (11th Cir. 2009). In Davis, the PSI stated that defendant Davis's offense conduct involved, inter alia, at least 8 kilograms of crack cocaine and recommended a base offense level of 38. Id. at 1302. Under the guidelines in effect at the time of sentencing, an offense involving at least 1.5 kilograms of crack cocaine resulted in the highest base offense level—38. Id.; see U.S.S.G. § 2D1.1(c)(1) (1995).

"At sentencing, Davis asked the district court to specify the amount[s] of powder cocaine, cocaine base, and marijuana for which he was responsible." Davis, 587 F.3d at 1302. The district court determined that such a specific finding for these drugs was "unnecessary" because "Davis's responsibility for more than 1.5 kilograms of cocaine base caused Davis to score the maximum base offense level available." Id. "The district court found all of the drug-related factual findings in the PSI to be accurate and incorporated them into Davis's sentence." Id. Therefore, "[t]he uncontested statements in the PSI reveal[ed] Davis was responsible for, inter alia, at least eight kilograms of cocaine base." Id.

After his conviction and sentence were final, Davis moved for a § 3582(c)(2) sentence reduction in light of Amendment 706, which raised to 4.5 kilograms the amount of crack cocaine necessary to produce a base offense level of 38. Id. at 1303; see U.S.S.G. App. C., amends. 706, 711, 713 (Mar. 3, 2008). Davis argued

20

he was eligible for a reduction "because the district court at sentencing [had] not expressly state[d] the quantity above 1.5 kilograms of cocaine base for which he was responsible." Davis, 587 F.3d at 1303.

The district court denied the § 3582(c)(2) motion, concluding that the uncontroverted drug quantity stated in the PSI, which it had adopted at sentencing, doomed the motion. The PSI made clear that Davis was accountable for at least 8 kilograms of crack cocaine, still in excess of the new 4.5 kilograms threshold for a base offense level of 38. Id.

This Court affirmed, explaining why the district court "did not make an impermissible new finding of fact":

> The district court did not make an impermissible new finding of fact in Davis's section 3582(c)(2) proceeding when it stated he was responsible for more than 4.5 kilograms of cocaine base. The sentencing court was permitted to make factual findings based on the undisputed statements in the PSI. Davis was deemed to have admitted, for sentencing purposes, the facts in the PSI he did not object to clearly and specifically at sentencing.
>
> By adopting the factual findings in the PSI that were deemed admitted by Davis when he failed to object to them, the sentencing court found Davis responsible for over eight kilograms of cocaine base. As the district court had already found Davis responsible for well over the 4.5 kilograms of cocaine base currently required to score Davis's original base offense level of 38, Davis was not eligible for a sentence reduction under Amendment 706.

Id. at 1303–04 (internal citations omitted).

With this background, we turn to Hamilton's § 3582(c)(2) motion.

21

## C.    Hamilton's Second § 3582(c)(2) Motion

Our lengthy discussion of the factual and procedural history of Hamilton's case allows us now to explain, easily and succinctly, why we must remand.

First, both probation's and the government's memos in 2011 contained inaccurate or at least incomplete information about the 2007 drug quantity findings at the original sentencing.  They both used paragraphs 36 and 43 of the original PSI and did not acknowledge, or even mention, the Addendum.  Only the Addendum stated how much powder cocaine the conspiracy group used in order to cook a kilogram of crack cocaine.  And the district court adopted the Addendum as opposed to the objected-to paragraphs 36 and 43 in the original PSI.

Second, in its order denying the motion, the district court stated only that it "[found] the responses of the government and probation persuasive."  Because those responses failed to mention the Addendum, we know the district court did not use the Addendum either.  And as our case law makes clear, the district court needs to determine accurately the original drug quantity findings before it can analyze whether Hamilton has shown that Amendment 750 actually lowered his base offense level.

We therefore must vacate the district court's order and remand for further proceedings.  On remand, the district court should determine what drug quantity findings it made, either explicitly or implicitly, at Hamilton's original sentencing

22

hearing.  Specifically, besides "at least 1.5 kilograms," did the district court make any other drug quantity findings that resolve the issue of whether more or less than 8.4 kilograms was attributable to Hamilton and, if so, what were they?

Without prejudging the issue, it may be that the district court determines that its drug quantity finding at the original sentence hearing went no further than "at least 1.5 kilograms."  If so, that finding is not specific enough to support any conclusion about whether Amendment 750 lowered Hamilton's base offense level, because "at least 1.5 kilograms" is equally consistent with a finding of 8.4 kilograms or more and a finding of less than 8.4 kilograms.  So if the district court finds that its original findings were limited to "at least 1.5 kilograms," the court will need to go further. It will need to examine the entire record before it at the time of the original sentencing to see if it can make any further findings that will resolve the issue of whether 8.4 kilograms or more of crack cocaine should be attributed to Hamilton.  See, e.g., United States v. Moore, 582 F.3d 641, 646 (6th Cir. 2009) (holding that where the original drug quantity determination is not specific enough for the district court to determine whether it has the authority to reduce a defendant's sentence under § 3582(c)(2), that court may make new findings of fact that are supported by the record and are not inconsistent with the findings made in the original sentencing proceedings); United States v. Hall, 600 F.3d 872, 876 (7th Cir. 2010) (same); United States v. Anderson, 707 F.3d 973,

23

974–75 (8th Cir. 2013) (same).  The district court may receive additional briefing but should not consider any new evidence.

Because the eligibility question is whether Hamilton would have had a lower guidelines range had Amendment 750 been in effect at the time he was sentenced, the court should not consider any evidence or materials beyond those that were before it at the time of the original sentence proceeding.   And it may not enter any new finding that is inconsistent with a finding it made in the original sentence proceeding.   See Cothran, 106 F.3d at 1563; see also Davis, 587 F.3d at 1303–04.  For example, if a district court found during the original sentence proceeding that "at least X kilograms" were attributable to the defendant, it may not find in a  § 3582(c)(2) proceeding that "less than X kilograms" were attributable;  it may, however, find attributable  X kilograms,  or 2X kilograms, or 10X kilograms.  Once it makes a drug quantity finding that is not inconsistent with any finding it made in the original sentence proceeding, the district court can then use that finding to calculate a new guidelines range based on Amendment 750.  If that new guidelines range is actually lower than the original guidelines range, the district court should proceed to the next step and exercise its discretion to grant or deny relief based on § 3553(a) and all applicable policy statements from the Sentencing Commission.

If, after examining the findings it made at the initial sentence proceedings and, if those are inadequate, after looking at the record and materials that were before it at the time of the original sentence hearing, the district court cannot determine Hamilton's drug quantity with enough specificity to decide whether Amendment 750 lowers his guidelines range, then Hamilton is ineligible for § 3582(c)(2) relief.  As the § 3582(c)(2) movant, Hamilton bears the burden of showing that if Amendment 750 been in effect at the time of his original sentencing, then he would have received a lower guidelines range.  Cf. U.S.S.G. § 1B1.10(b)(1).  If Hamilton cannot make that showing, then the court does not have the authority to reduce Hamilton's sentence under § 3582(c)(2).

**VACATED AND REMANDED.**