[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11664
Non-Argument Calendar

_____

D.C. Docket No. 8:00-cr-00260-SDM-MAP-10

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO CESAR DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 16, 2019)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Julio Cesar Diaz appeals from the district court's denial of his request for a reduction in his sentence under 18 U.S.C. § 3582(c)(2).  On appeal, Diaz argues that the district court erred in concluding that he was not eligible for a sentence reduction under Amendment 782 based on unobjected-to and speculative facts from his presentence investigation report regarding the amount of cocaine he was responsible for.  After careful review, we affirm.

## I.

In August 2002, Diaz pled guilty to two cocaine-trafficking offenses under the Maritime Drug and Law Enforcement Act.  The presentence investigation report ("PSR") recommended the highest base offense level of 38 based on a drug quantity of 150 kilograms or more of cocaine.  According to the PSR,

> The quantity of cocaine actually seized by the U.S. Coast Guard on July 10, 2000, from the *F/V Douglas I* was 336 kilograms of cocaine.  This large quantity of cocaine places all defendants in the highest base offense level, or 38.  Pursuant to USSG § 2D1.1(c)(1) the base offense level for 150 kilograms or more of cocaine is 38.  Therefore, there is no need to speculate how much cocaine was actually secreted in the aft compartment, or previously smuggled on the *F/V Douglas I*, because the inclusion of these additional quantities would have no impact on the base offense level.

The PSR stated that the 336 kilograms of cocaine seized were "an overflow amount that the crew was unable to secrete in the aft area compartment," which contained "[a]pproximately three to four tons of cocaine."  The PSR also described Diaz's participation in a prior smuggling venture in December 1999 that involved

2

"approximately three tons of cocaine." Based on these additional quantities, the PSR noted that an upward departure may be warranted.

Diaz did not object to these statements, and the district court, after resolving his other factual objections, adopted the factual statements contained in the PSR. Ultimately, the court calculated a total offense level of 41 and a criminal-history category of I. This established a guideline imprisonment range of 324 to 405 months. The court sentenced Diaz to the low end of that then-binding range, and we affirmed Diaz's conviction and sentence on appeal.

In November 2014, Diaz filed a *pro se* § 3582(c)(2) motion for a sentence reduction based on Amendment 782, which reduced by two levels the base offense levels that apply to most drug offenses under §§ 2D1.1 and 2D1.11. U.S.S.G. App. C, Amend. 782. As relevant here, Amendment 782 reduced from 38 to 36 the base offense level scored by defendants whose conduct involved more than 150, but fewer than 450, kilograms of cocaine. It did not reduce the base offense level for a defendant responsible for more than 450 kilograms.

Diaz claimed that, due to Amendment 782, his total offense level was now 39 and his resulting guideline range was 262 to 327 months. The court appointed the Federal Public Defender to represent Diaz, and a counseled motion was filed, after a lengthy delay, in March 2018. In the counseled motion, Diaz advised that the U.S.

Probation Office had determined that he was eligible for a reduction, based on a drug quantity of 336 kilograms of cocaine.

The government opposed a sentence reduction.  The government argued that Amendment 782 did not change Diaz's offense level because, in light of undisputed factual statements in the PSR that were adopted at sentencing, Diaz was responsible for at least three tons of cocaine.

The district court agreed with the government and denied Diaz's § 3582 motion.  Citing undisputed facts in the PSR, referenced above, the court found that Diaz was responsible for at least three tons of cocaine, which left his base offense level and guideline range unchanged despite Amendment 782.

Diaz now appeals.  He argues that the district court's original sentencing determination was based on a quantity of 336 kilograms of cocaine and that it did not make any drug-quantity finding in excess of that amount.  And he asserts that courts, in deciding § 3582(c)(2) motions, should not be permitted to rely on speculative and "superfluous factual allegations" to which defendants have no incentive to object at the time of sentencing.

## II.

We review *de novo* a district court's legal conclusions as to the scope of its authority under 18 U.S.C. § 3582(c)(2).  *United States v. Gonzalez-Murillo*, 852 F.3d 1329, 1334 (11th Cir. 2017).  Section 3582(c)(2) provides a limited exception to the

general rule that criminal sentences may not be modified once imposed. Under § 3582(c)(2), a sentence reduction is available to defendants whose sentencing range has been lowered by a retroactive amendment to the Sentencing Guidelines. *See* 18 U.S.C. § 3582(c)(2).

A district court cannot reduce a sentence under § 3582(c)(2) unless a retroactive amendment has "the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(1)–(2). To determine the effect of an amended guideline, the court must calculate the range that would have applied if the amendment had been in effect at the time of sentencing. *Id.* § 1B1.10(b). In doing so, "the district court may not reconsider other guideline application decisions and must leave all of its previous factual decisions intact." *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (quotation marks omitted).

In drug cases, a court evaluating the effect of an amended guideline must determine what drug-quantity findings it made, either explicitly or implicitly, at the original sentencing. *Id.* at 340. In making that determination, the court may rely on statements in the PSR that were not objected to by the defendant and were adopted by the sentencing court. *See United States v. Davis*, 587 F.3d 1300, 1303–04 (11th Cir. 2009). That's because "[f]acts contained in a [PSR] are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with

specificity and clarity." *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) (11th Cir. 2009) (quotation marks omitted).

Our resolution of this case is governed by *Davis*. At the original sentencing in *Davis*, the court adopted the PSR's uncontested statements, including that Davis was responsible for at least eight kilograms of cocaine base. 587 F.3d at 1302. But the court declined to expressly state a drug quantity above 1.5 kilograms of cocaine, explaining that such a finding was "unnecessary" because he had already scored the highest offense level based on a quantity more than 1.5 kilograms. *Id.* Nevertheless, when Davis filed a § 3582(c)(2) motion, the court denied the motion on the ground that, by adopting the PSR's undisputed factual statements, it "had already found Davis responsible for too much cocaine base to be eligible for an offense-level reduction." *Id.* at 1303. We affirmed that decision on appeal, explaining that, "[b]y adopting the factual findings in the [PSR] that were deemed admitted by Davis when he failed to object to them, the sentencing court found Davis responsible for over eight kilograms of cocaine base," which made him ineligible. *Id.* at 1304.

The same basic scenario is present here. At sentencing, the district court expressly found Diaz responsible for at least 336 kilograms of cocaine,[1] while noting

---

[1] We disagree with Diaz's assertion that the court found him responsible for 336 kilograms of cocaine only. It is more accurate to say that the court found him responsible for at least 336 kilograms of cocaine, which was the amount of cocaine actually seized from the vessel. But, as the PSR states, this was an "overflow amount that the crew was unable to secrete in the aft area compartment," which contained additional cocaine.

that it was unnecessary to determine other quantities because Diaz had already scored the highest base offense level based on a quantity more than 150 kilograms. But the court also adopted the factual findings in the PSR that were deemed admitted by Diaz when he failed to object to them. And according to those undisputed facts, Diaz was responsible for at least three tons of cocaine, which is well in excess of the 450 kilograms necessary to qualify him for the highest base offense level of 38 after Amendment 782. While Diaz asserts that these facts are speculative, the government was not required to offer proof because he is deemed to have admitted them. *See Beckles*, 565 F.3d at 844. And under *Davis*, the district court properly relied on those undisputed facts to find that his base offense level remained unchanged after incorporating Amendment 782. *See Davis*, 587 F.3d at 1303–04. So Diaz is not eligible for a sentence reduction under § 3582(c)(2). *See* U.S.S.G. § 1B1.10(a).

Diaz does not identify any case where we have applied a materiality or relevance requirement to unobjected-to facts in a PSR in the context of a § 3582(c)(2) motion.[2] Nor does such a requirement appear to be consistent with *Davis*, where the denial of a § 3582(c)(2) motion was based on facts that were "unnecessary" to the court's original base offense level determination. *See Davis*,

---

[2] In addition, under the facts here, Diaz did have an incentive to object to the higher drug-quantity amounts due to the PSR's statement that an upward departure may be warranted based on drug quantity.

587 F.3d at 1302–03.  Because we conclude that this case is governed by *Davis*, we must affirm the denial of Diaz's § 3582(c)(2) motion.

**AFFIRMED.**